T.C. Memo. 2009-89


UNITED STATES TAX COURT


ROBERT HUNTER AND BARBARA A. GRIDLEY, ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 10588-83, 17646-83,     Filed April 29, 2009.
            27053-83, 10931-84,
            28723-84, 38757-84,
            13477-87, 19464-92,
             621-94,  9532-94.


    <u>Robert Alan Jones</u> and <u>Declan J. O'Donnell</u>, for petitioners

in docket Nos. 10588-83, 17646-83, 27053-83, 10931-84, 28723-84,

38757-84, 13477-87, 621-94, and 9532-94.

    <u>Robert Alan Jones</u>, for petitioners in docket No. 19464-92.

    <u>Henry E. O'Neill</u>, for respondent.

_____

    [1]Cases of the following petitioners have been consolidated
herewith for purposes of this opinion:  Ronald L. and Mattie L.
Alverson, docket No. 17646-83; Russell L., Sr. and Sally A.
Fleer, docket Nos. 27053-83 and 13477-87; Robert H. and Barbara
A. Gridley, docket Nos. 10931-84 and 38757-84; Arden L. and
Barbara G. Blaylock, docket No. 28723-84; Willis F., II and Marie
D. McComas, docket No. 19464-92; Wesley Armand and Sherry Lynn
Cacia Baughman, docket No. 621-94; and Norman A. Cerasoli and
Estate of Irene Cerasoli, Deceased, Norman A. Cerasoli, Executor,
docket No. 9532-94.

CONTENTS

Background . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.  Kersting Tax Litigation Before Dixon V Remand . . . . . . 7

II. Dixon V Remand Proceedings . . . . . . . . . . . . . . . 12

    A.  Houston Status Conference . . . . . . . . . . . . . . 12
    B.  Los Angeles Status Conference and the Thompsons'
        Tax Records for Years Other Than 1979, 1980, and
        1981 . . . . . . . . . . . . . . . . . . . . . . . . 13
    C.  Motion for Limited Expedited Discovery and
        Proposed Expert Witness Testimony of Victoria
        Osborn . . . . . . . . . . . . . . . . . . . . . . . 14
    D.  Las Vegas Special Session (Osborn Continued) . . . 16
    E.  Los Angeles Special Session and Motion for Summary
        Judgment of 100-Percent Discount as Sanction
        (Osborn Concluded) . . . . . . . . . . . . . . . . 18
    F.  Washington, D.C., Special Session and Petitioners'
        Opening Brief . . . . . . . . . . . . . . . . . . . 20
    G.  Award of Appellate Fees and Our Determination of
        the Scope of the Thompson Settlement . . . . . . . 21
    H.  Dixon V Remand Fee and Expense Requests . . . . . . 23

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . 27

I.  Application of Section 6673(a)(2)(B) . . . . . . . . . . 27

II. Adjustments to Requested Fees and Expenses . . . . . . . 29

    A.  Substantiation of Fees . . . . . . . . . . . . . . 30
    B.  Jones's Hourly Rate . . . . . . . . . . . . . . . 30
    C.  Respondent's Objections to Fees and Expenses
        Not  Included in Current Request . . . . . . . . . 31
    D.  Fees and Expenses Included in Petitioners'
        Dixon III Appellate Fee Request . . . . . . . . . 32
    E.  Fees Incurred During the Appeal of Dixon III . . . 33
    F.  Fees Related to Closed Cases . . . . . . . . . . . 33
    G.  Excessive Time on Opening Brief . . . . . . . . . 35
    H.  Client Relations . . . . . . . . . . . . . . . . . 36
    I.  Osborn Proposed Expert Witness Report . . . . . . 40
    J.  Motion for Summary Judgment of 100-Percent
        Discount as Sanction . . . . . . . . . . . . . . . 42
    K.  Inadequately Described Entries . . . . . . . . . . 44
    L.  Miscellaneous Objections and Adjustments . . . . . 45

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . 47

MEMORANDUM OPINION

BEGHE, Judge:  This is the second opinion in our third set of opinions on petitioners' requests for attorney's fees and expenses incurred in the Kersting tax shelter project litigation after the discovery and disclosure of the misconduct of respondent's trial counsel in Dixon v. Commissioner, T.C. Memo. 1991-614 (Dixon II), vacated and remanded per curiam sub nom. DuFresne v. Commissioner, 26 F.3d 105 (9th Cir. 1994), on remand Dixon v. Commissioner, T.C. Memo. 1999-101 (Dixon III), revd. and remanded 316 F.3d 1041 (9th Cir. 2003) (Dixon V), on remand Dixon v. Commissioner, T.C. Memo. 2006-90 (Dixon VI), supplemented by Dixon v. Commissioner, T.C. Memo. 2006-190 (Dixon VIII), on appeal (9th Cir., Dec. 28, 2006, and Jan. 3, 2007).

In our first attorney's fees opinion, Dixon v. Commissioner, T.C. Memo. 2000-116 (Dixon IV) (supplementing Dixon III), we awarded Kersting project petitioners fees and expenses under section 6673(a)(2)(B)[2] for representation services in this Court rendered by Attorneys Joe Alfred Izen (Izen), Robert Allen Jones (Jones), and Robert Patrick Sticht (Sticht) during the DuFresne remand.

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

In the second set of attorney's fees opinions, <u>Dixon v. Commissioner</u>, T.C. Memo. 2006-97 (Dixon VII), and <u>Young v. Commissioner</u>, T.C. Memo. 2006-189, we responded to the supplemental mandate of the Court of Appeals for the Ninth Circuit to rule on Kersting project petitioners' requests for appellate attorney's fees and expenses incurred in the Dixon V appellate proceedings.  In Dixon VII we awarded appellate attorney's fees and expenses under section 7430 to Kersting project petitioners represented in the Dixon V appeal by John R. Irvine (Irvine) and his partner, Henry G. Binder (Binder), of Porter & Hedges and by Michael Louis Minns (Minns).  In <u>Young</u> we awarded appellate fees and expenses under section 7430 to Kersting project petitioners represented in the Dixon V appeal by Izen and Jones.

The current set of opinions pertains to fees and expenses Kersting project petitioners incurred in this Court during the remand from Dixon V (Dixon V remand proceedings),[3] which resulted in Dixon VI, supplemented by Dixon VIII, determining the terms of

---

[3]Respondent and petitioners represented by Sticht entered into a comprehensive settlement agreement for fees and expenses incurred from 1992 through 2006, including the Dixon V remand proceedings.  On Oct. 4, 2006, we ordered respondent to disburse $1,254,368.11 to Sticht's clients in satisfaction of that agreement.

the Thompson settlement.[4]  Early in the Dixon V remand
proceedings respondent agreed that Kersting project petitioners
would be entitled under section 6673(a)(2)(B) to attorney's fees
and expenses incurred in the Dixon V remand proceedings.  All
attorneys who represented Kersting project petitioners in the
Dixon V remand proceedings have applied for attorney's fees and
expenses incurred in the Dixon V remand proceedings.[5]  This

---

[4]In the Dixon V remand proceedings, petitioners' dockets
were consolidated for purposes of hearing, briefing, and opinion
with 23 other docketed cases of Kersting project petitioners
represented by Irvine, Izen, Minns, and Sticht.

[5]The table below summarizes the legal fees and expenses (by
individual attorneys and in total) Kersting project petitioners
have requested with respect to petitioners' attorneys' services
in the Dixon V remand proceedings:

| Attorney | Fees | Expenses | Total |
|----------|------|----------|-------|
| Jones | $265,717.45 | $15,965.97 | $281,683.42 |
| Minns | 967,362.21 | 21,525.99 | 988,888.20 |
| Izen | 748,674.14 | 38,248.06 | 786,922.20 |
| Irvine & Binder | 1,101,575.34 | 64,032.76 | 1,165,608.10 |
| Total | 3,083,329.14 | 139,772.78 | 3,223,101.92 |

In addition, respondent agreed that non-test-case petitioners
represented by Sticht were entitled to recover fees and expenses
totaling $317,708.03 for services Sticht rendered in the Dixon V
remand proceedings as part of the total award for Sticht's
services.  See supra note 3.

Declan O'Donnell (O'Donnell) has not filed a request for an
award of attorney's fees.  However, Jones and O'Donnell provided
joint representation to Robert H. and Barbara A. Gridley (the
Gridleys), Russell L., Sr. and Sally A. Fleer (the Fleers), and
Arden L. and Barbara G. Blaylock (the Blaylocks).  We therefore
assume that the motion Jones filed on July 10, 2007, is the
Gridleys', Fleers', and Blaylocks' sole fee and expense request.

Memorandum Opinion covers fees and expenses petitioners incurred for Jones's services in the Dixon V remand proceedings.  Our most recent Opinion, <u>Dixon v. Commissioner</u>, 132 T.C. __ (2009) (Dixon IX), dealt with fees and expenses incurred for services provided by Irvine, Binder, and other Porter & Hedges attorneys.  A subsequent opinion or opinions will deal with the pending fee requests of Kersting project petitioners represented by Minns and Izen in the Dixon V remand proceedings.

In the tables below we summarize the fees and expenses petitioners have requested herein, respondent's objections, fees and expenses we will allow over respondent's objections, and the amounts we hold petitioners are entitled to recover for Jones's services and expenses in the Dixon V remand proceedings.

<u>Fee Award</u>

| | | |
|---|---|---|
| Fees petitioners request | | $265,717.45 |
| Fees to which respondent objects | $116,873.75 | |
| Fees allowed despite respondent's objections | 49,806.25 | |
| Fees disallowed | | 67,067.50 |
| Fee award | | 198,649.95 |

<u>Expense Award</u>

| | | |
|---|---|---|
| Expenses petitioners request | | $15,965.97 |
| Expenses to which respondent objects | $13,178.22 | |
| Expenses allowed despite respondent's objections | 3,229.52 | |
| Expenses disallowed | | 9,948.70 |
| Expense award | | 6,017.27 |

## Background

The underlying facts in these cases are fully described in Dixon II, Dixon III, Dixon IV, Dixon VI, Dixon VII, <u>Young v. Commissioner</u>, supra, Dixon VIII, and Dixon IX. The parties have provided additional pertinent facts in petitioners' fee request and respondent's objections thereto. The parties have not requested an evidentiary hearing, and we have found a hearing unnecessary. Cf. Rule 232(a)(2).

## I. Kersting Tax Litigation Before Dixon V Remand

Petitioners are non-test-case petitioners in the Kersting tax shelter litigation. The Kersting tax shelter litigation arose from respondent's disallowance of interest deductions claimed by participants in tax shelter programs promoted by Henry F.K. Kersting during the late 1970s and the 1980s. Respondent's determinations of deficiencies against Kersting tax shelter participants eventually resulted in the docketing of approximately 1,800 cases in the Tax Court. Most Kersting project petitioners entered into piggyback agreements with respondent in which they agreed that their cases would be resolved in accordance with the outcome of a small number of test cases.

In Dixon II the Court upheld the deficiencies resulting from Kersting tax shelter deductions claimed by petitioners in the test cases. On June 9, 1992, shortly after the entry of the

Court's decisions in Dixon II, respondent's management discovered that before trial respondent's trial attorney, Kenneth W. McWade (McWade), and his supervisor, Honolulu District Counsel William A. Sims (Sims), had entered into secret settlement agreements with test case petitioners John R. and Maydee Thompson (the Thompsons) and John R. and E. Maria Cravens (the Cravenses). Sims and McWade had not disclosed the Thompson and Cravens settlements to their superiors, the Court, or the other test case petitioners or their counsel. The primary purpose and final effect of the Thompson settlement was to provide the Thompsons refunds more than sufficient to pay the fees of Luis C. DeCastro (DeCastro), the Thompsons' attorney, to represent them in the test case trial.

Respondent moved for the Court to conduct an evidentiary hearing to determine whether the undisclosed settlement agreements had affected the Tax Court's decision in Dixon II. The Court denied respondent's motion for an evidentiary hearing, entered decisions giving effect to the Thompson and Cravens settlements, and allowed to stand the decisions sustaining respondent's adverse determinations against the other test case petitioners. We also denied motions to intervene in the Thompson and Cravens cases filed by Izen and Sticht on behalf of certain test case and non-test-case petitioners.

The test case petitioners (other than the Thompsons and the Cravenses) and the non-test-case petitioners seeking to intervene appealed to the Court of Appeals for the Ninth Circuit. The Court of Appeals vacated our decisions in the test cases, holding that an evidentiary hearing was necessary to determine whether the misconduct of respondent's counsel had given rise to "a structural defect voiding the judgment [in Dixon II] as fundamentally unfair, or whether, despite the government's misconduct, the judgment can be upheld as harmless error." DuFresne v. Commissioner, 26 F.3d at 107. The Court of Appeals directed the Tax Court to hold such a hearing and to consider the merits of all motions of intervention filed by affected parties. In an unpublished opinion, Adair v. Commissioner, 26 F.3d 129 (9th Cir. 1994), the DuFresne panel (Goodwin, Ferguson, and Trott, JJ.) also affirmed our denials of the motions to intervene in the Thompson and Cravens cases on the ground that those decisions had become final.

To give effect to the direction of the Court of Appeals in DuFresne to consider the merits of all motions to intervene by affected parties, we further ordered the consolidation of 10 non-test-cases with the remaining test cases. Petitioners were among the non-test-case petitioners whose cases were so consolidated.

During the course of the evidentiary hearing, Izen sought discovery of documents listed in respondent's privilege log that

pertained to respondent's conduct following the trial of the test cases. Izen alleged that, among other things, respondent's activities after May 1992 amounted to an effort to conceal the fraudulent conduct of the Government attorneys in the test cases. We denied Izen's discovery requests, sustaining various privileges asserted by respondent. See Dixon III, Procedural History of the Evidentiary Hearing III. Developments Following Initial Evidentiary Hearing, C. Denial of Mr. Izen's Motion To Compel Production of Documents.

After the evidentiary hearing we issued our opinion in Dixon III. In that opinion we allowed the Court's decisions in Dixon II to stand, holding that the misconduct of the Government attorneys did not create a structural defect that prejudiced the Court's decision in Dixon II but amounted to harmless error. We imposed sanctions against respondent by relieving petitioners of liability for (1) the interest component of the addition to tax for negligence under former section 6653(a), and (2) the incremental interest attributable to the increased rate prescribed in former section 6621(c). On April 1, 1999, the next day after our issuance of the Dixon III opinion, we referred the misconduct of Sims, McWade, and DeCastro to the Tax Court's Committee on Admissions, Ethics, and Discipline.

In Dixon IV we imposed additional sanctions pursuant to section 6673(a)(2)(B) by ordering respondent to pay attorney's

fees of Kersting project petitioners to investigate and present the evidence of Sims's and McWade's misconduct to the Court.

The test case petitioners again appealed to the Court of Appeals for the Ninth Circuit.  We also certified the cases of non-test-case petitioners represented by Izen, Sticht, Jones, and Declan J. O'Donnell (O'Donnell) for interlocutory appeal.  After various procedural delays described in Young v. Commissioner, T.C. Memo. 2006-189, the Court of Appeals accepted the interlocutory appeals of the non-test-cases but held them in abeyance pending resolution of the appeals of the test cases.

In the meantime, Minns replaced Izen as appellate attorney for the Dixons, DuFresnes, and Hongsermeiers.  Later, Irvine and Binder replaced Minns as appellate attorneys for the Dixons and DuFresnes.  Minns remained appellate attorney for the Hongsermeiers, and Izen remained appellate attorney for the Youngs and the Owenses.

On January 17, 2003, a different panel of the Court of Appeals (D.W. Nelson, Hawkins, and Wardlaw, JJ.) issued Dixon V (amended March 18, 2003), reversing Dixon III and remanding the test cases.  The Court of Appeals held that the misconduct of the Government attorneys was a fraud on the Court, for which no showing of prejudice was required.  Dixon V, at 1046.  The Court of Appeals directed that we extend terms equivalent to those of the Thompson agreement to "Appellants and all other taxpayers

properly before this Court". Id. at 1047. The Court of Appeals left to the Tax Court's discretion "the fashioning of such judgments which, to the extent possible and practicable, should put these taxpayers in the same position as provided for in the Thompson settlement." Id. n.11. The Court of Appeals took no action on the denial of Izen's discovery requests.

On March 14, 2003, another panel of the Court of Appeals (Canby, O'Scannlain, and T.G. Nelson, JJ.) remanded the non-test-cases that had been appealed and held in abeyance, directing further proceedings consistent with Dixon V. On April 23, 2003, the Tax Court received the primary mandate of the Court of Appeals (the primary mandate) vacating Dixon III. On June 2, 2003, the Court received the supplemental mandate of the Dixon V panel, directing us to consider petitioners' appellate fee requests.

## II. Dixon V Remand Proceedings

### A. Houston Status Conference

On July 7, 2003, after reviewing an April 30 motion by respondent and petitioners' status reports, we scheduled a status conference, to be held in Houston on August 18, 2003. On July 11, 2003, we ordered the parties to file reports of their suggestions for the agenda of that status conference. By August 12, 2003, counsel for the petitioners whose cases had been consolidated for the Dixon V remand proceedings, as well as

counsel for other Kersting project petitioners, filed such reports. In his report O'Donnell asserted that Kersting project petitioners whose cases had been closed by stipulated decisions (the closed cases) should also be entitled to the benefit of the Thompson settlement.[6]

B. <u>Los Angeles Status Conference and the Thompsons' Tax Records for Years Other Than 1979, 1980, and 1981</u>

After the Houston status conference it became obvious that the parties were in substantial disagreement about the terms of the Thompson settlement. Specifically, petitioners contended that the Thompsons derived tax benefits from the Thompson settlement that went beyond the stated terms of the settlement and decision documents. Petitioners also asserted that the benefit extended to taxable years of the Thompsons other than 1979, 1980, and 1981, the taxable years at issue in the Thompson test cases.

---

[6]Several Kersting project petitioners whose cases had been closed by stipulated decisions subsequently filed or attempted to file motions to vacate decisions. In <u>Hartman v. Commissioner</u>, T.C. Memo. 2008-124, reconsidering and superseding <u>Lewis v. Commissioner</u>, T.C. Memo. 2005-205, we held that the Thompson settlement sanction will be imposed against respondent in the docketed cases of all Kersting project petitioners in which stipulated decisions were entered on or after June 10, 1985, the commencement date of the Court's Honolulu trial session at which the Court and representatives of the parties agreed to use the test case procedure. Our <u>Hartman</u> opinion is the subject of motions for reconsideration by respondent and some petitioners, which raise primarily issues of implementation.

Because the parties could not agree on the terms of the Thompson settlement, further evidentiary proceedings were required to determine those terms and provisions. The Court scheduled a status conference in Los Angeles, which was held on September 5, 2003. At this conference Jones complained that respondent had failed to provide transcripts of the Thompsons' tax records. Jones argued that these records were needed to determine whether the terms of the Thompson settlement extended to years other than 1979, 1980, and 1981.

C.   Motion for Limited Expedited Discovery and Proposed Expert Witness Testimony of Victoria Osborn

On September 8, 2003, Jones filed a motion for limited expedited discovery. Jones attached to this motion the declaration of Victoria Osborn (Osborn), in anticipation of seeking to qualify her as an expert witness. In her declaration, Osborn asserted that the Internal Revenue Service (IRS) could retrieve Return View (RTVUE) records, which would contain information sufficient to satisfy Jones's request for the Thompsons' tax records. Osborn asserted that RTVUE would provide line-by-line records of the Thompsons' tax returns, whereas the Individual Master Files (IMFs) respondent had given petitioners provided only general information. In an order dated September 17, 2003, we granted Jones's motion for limited expedited discovery.

On September 29, 2003, respondent's counsel, Henry E. O'Neill (O'Neill), sent Jones a letter stating that respondent could provide petitioners only with IMF transcripts and not RTVUE transcripts. Respondent's letter explained that RTVUE transcripts had never existed for years before 1990. Respondent further explained that RTVUE files are automatically deleted after 3 years and that therefore the Thompson RTVUE records were not available for 1990 through 1994.

On October 2, 2003, the Court held a telephone conference in which counsel for the parties and the Court discussed Izen's request for documents listed in respondent's privilege log. Izen asserted that those documents were no longer subject to privilege and would provide information about the Thompsons' tax records for the years 1978 through 1993. In an order dated October 10, 2003, the Court informed Izen that those documents were not in the Court's possession and that Izen should request them from respondent by motion.

During that conference Jones stated that he would contact respondent informally with suggestions for possible alternative sources for RTVUE transcripts. On October 31, 2003, Jones sent respondent a fax reciting respondent's general procedure for requesting RTVUE transcripts. Jones did not provide or suggest alternative sources for RTVUE transcripts. On November 3, 2003, respondent filed a status report, including a copy of Jones's

fax. On November 10, 2003, Jones filed his status report, again requesting that respondent provide him with the Thompsons' tax returns for the years 1989 through 1993. Jones also requested that the Court release certain documents under seal, which had been provided by the Thompsons' estate planning counsel, pertaining to the Thompsons' 1989 through 1993 tax records.

On November 24, 2003, respondent filed a supplement to the November 3, 2003, status report. In that report, respondent had continued to assert that RTVUE transcripts were no longer available for any of the years 1990 through 1994 and that they never existed for the years 1978 through 1989. The supplement contained the declaration of Shirley Smart (Smart), a litigation coordinator at the Fresno service center, that RTVUE transcripts were no longer available for any of the years 1990 through 1994 and that RTVUE records never existed for years before 1990.

On December 19, 2003, the Court issued an order for production of all items described in the privilege log, except item No. 123. The privilege log documents included the Thompsons' tax returns for 1989, 1991, and 1992.

D. Las Vegas Special Session (Osborn Continued)

On April 13, 2004, the Court issued a scheduling order, setting the first session of the evidentiary hearing for September 20, 2004, in Las Vegas, Nevada, and setting forth the agenda for the hearing. The order stated that the hearing was to

be held for the sole purpose of determining the terms of the Thompson settlement. It further stated that neither appellate fees nor the closed cases would be addressed during the evidentiary hearing. On August 27, 2004, Jones filed petitioners' motion for leave to submit out of time notice of expert witness and a notice of expert witness to which Osborn's proposed expert witness summary report was attached.

Despite the late entry into the Kersting project proceedings of the Porter & Hedges attorneys, counsel for the Dixon V taxpayers informally agreed that Porter & Hedges, Binder in particular, would essentially serve as lead counsel in the Dixon V remand proceedings. On September 9, 2004, Binder filed petitioners' motion to allocate the burden of proof to respondent on specified issues in determining of the terms of the Thompson settlement.

On September 10, 2004, O'Neill informed petitioners that, on September 7, 2004, he had discovered the Thompsons' tax records and returns for the years 1983 through 1989.

On September 20 through 22, 2004, the Court held the first scheduled hearing session in Las Vegas. During this session, on September 20, 2004, the parties submitted a joint stipulation of facts that included among its accompanying exhibits the tax records O'Neill had rediscovered on September 7, 2004.

Respondent also filed a motion in limine to exclude Osborn's proposed expert witness testimony.  Because Osborn's report was little more than an outline, the Court postponed ruling on respondent's motion to give Osborn the opportunity to prepare a more detailed report.  On October 4, 2004, Jones submitted the "Superseding Expert Witness Report of Expert Witness Victoria Osborn."  On October 7, 2004, the Court issued an order denying respondent's motion in limine to exclude Osborn's testimony, without prejudice to renew if her superseding report should fail to meet the requirements of rule 702 of the Federal Rules of Evidence.

E.   Los Angeles Special Session and Motion for Summary Judgment of 100-Percent Discount as Sanction (Osborn Concluded)

Many factual issues remained unresolved after the Las Vegas session.  On October 6, 2004, the Court issued a scheduling order continuing the hearing to November 22, 2004, in Los Angeles.  On November 4, 2004, respondent filed a renewed motion in limine to exclude Osborn's testimony and her superseding report.  On November 5, 2004, the Court ordered Jones to respond to that motion by November 15, 2004, and Jones filed a timely response. On November 16, 2004, the Court granted respondent's motion in limine because Osborn's report consisted primarily of legal conclusions, which are not the proper subject of expert testimony.  See Rule 143(f)(1); Fed. R. Evid. 702 and 703.  Even

though the report was not admissible as expert testimony, the Court admitted the report into evidence "for the sole purpose of ruling on respondent's [renewed] motion in limine".

On November 22, 2004, Jones filed a motion to strike and for sanctions, claiming Osborn had been defamed by materials included in respondent's renewed motion in limine.

On December 10, 2004, the Court denied Jones's motion to strike and for sanctions. The Court's order made clear that the Court had not considered the materials Jones had complained about in ruling on respondent's motion in limine. Moreover, the Court's order also "forewarned" Jones that the Court would:

> not be inclined to look with favor on the inclusion in his fee application for post-mandate work in these cases of the time spent and expenses incurred in the preparation of the motion to strike and for sanctions. The Court and counsel have been heavily burdened with attempting to resolve the multiple aspects of this difficult, protracted, and unique litigation. It should have been clear to Mr. Jones more than a year ago that Ms. Osborn had nothing useful to offer in terms of producing relevant evidence to the Court.

On January 31, 2005, Jones and O'Donnell filed a motion for summary judgment on behalf of petitioners Gridley and Fleer. The motion contended that the Court should respond to the Dixon V primary mandate by granting the Kersting project petitioners a 100-percent discount from the deficiencies as a sanction.[7] On

---

[7]In claiming that Kersting project petitioners should be entitled to have the Kersting deficiencies eliminated, Jones and O'Donnell ignored the decision of the Court of Appeals in Dixon V

(continued...)

February 24, 2005, respondent filed an objection to petitioners' motion for summary judgment of a 100-percent discount as a sanction. Citing Rule 121(b), respondent asserted that petitioners were not entitled to summary judgment because there were material facts in dispute. Agreeing with respondent, we denied the motion for summary judgment for failure to satisfy the requirements of Rule 121(b).

On March 29, 2005, O'Donnell and Jones filed their "Pre-trial Memorandum of Petitioners Gridley & Fleer". In that pretrial memorandum O'Donnell and Jones again requested that we reconsider our denial of petitioners' motion for summary judgment of a 100-percent discount. We retitled the memorandum as "Pre-trial Memorandum of Petitioners Gridley & Fleer and Motion for Reconsideration of Order Denying Motion for Summary Judgment". In an order dated March 29, 2005, we denied O'Donnell and Jones's motion for reconsideration of our denial of their motion for summary judgment.

F.   Washington, D.C., Special Session and Petitioners' Opening Brief

On February 3, 2005, petitioners filed a motion for a third and final evidentiary hearing session. On February 4, 2005, we

---

[7](...continued)
that "we will not enter judgment eradicating all tax liability of these taxpayers. Such an extreme sanction, while within the Court's power, is not warranted under these facts." Dixon V, at 1047.

issued an order setting the final hearing session for March 29, 2005, in Washington D.C.  On February 23, 2005, Binder filed petitioners' supplemental motion to allocate the burden of proof, augmented by a memorandum of points and authorities.

On March 29, 2005, in Washington, D.C., we commenced the final 2-day session of the Dixon V evidentiary hearing.  On the second day of the Washington, D.C., session, the Kersting project petitioners agreed to submit a joint opening brief, a task for which the parties acknowledged Binder would do most of the work.  At that time Binder noted that the brief would take hundreds of hours and referred to an earlier comment by Izen that the opening brief would be a "Herculean effort".  Counsel for respondent and the Kersting project petitioners further informed the Court that they agreed that attorney's fees incurred during the Dixon V remand proceedings should be awarded under section 6673(a)(2) rather than section 7430.

G.    Award of Appellate Fees and Our Determination of the Scope of the Thompson Settlement

On May 13, 2005, we ordered the parties to file reports, by June 13, 2005, explaining their views on how we should award attorney's fees and expenses for the proceedings on remand and appellate attorney's fees in response to the supplemental mandate of the Court of Appeals.  On July 13, 2005, respondent filed a response to our order of May 13, 2005.  On July 14, 2005, Binder filed a 189-page joint opening brief that was signed by all

petitioners' counsel who had participated in the Dixon V remand proceedings. On July 15, 2005, Jones, O'Donnell, and Izen submitted a 21-page joint supplemental opening brief.

On July 15, 2005, Jones also submitted petitioners' report responding to our order of May 13, 2005. Petitioners' report was combined with the motion of appellant non-test-case petitioners for award of attorney's fees and expenses. In the motion, petitioners requested an award of fees incurred through June 30, 2005.

On May 2, 2006, we issued our opinion in Dixon VI, explaining our determination of the terms of the Thompson settlement. On May 10, 2006, we issued our opinion in Dixon VII, awarding fees and expenses incurred during the appeal from Dixon III to petitioners represented by Porter & Hedges attorneys Irvine and Binder and by Minns.

On June 15, 2006, we ordered Jones to respond to or rebut any conclusions reached in Dixon VII. On July 19, 2006, Jones filed his third supplement to petitioners' request for an award of appellate attorney's fees.

On September 6, 2006, we issued our opinion in Young v. Commissioner, T.C. Memo. 2006-189, awarding petitioners represented by Jones and Izen attorney's fees and expenses incurred during the appeal from Dixon III. In Young we awarded appellate fees and expenses for the period between May 2000 and

April 30, 2003, the date respondent had filed the motion for a status conference.  We specifically excluded from the awards fees and expenses postdating the appeal, beginning with fees and expenses related to respondent's request for a status conference on April 30, 2003.

H.    Dixon V Remand Fee and Expense Requests

On May 4, 2007, we ordered petitioners to submit requests for attorney's fees and expenses incurred in the Dixon V remand proceedings by June 8, 2007.  On May 29, 2007, Jones filed petitioners' motion to extend the time to file such a request. On May 30, 2007, we granted petitioners' motion for extension.

On July 10, 2007, Jones filed petitioners' motion for an award of attorney's fees (herein referred to as petitioners' current fee and expense request).  Petitioners' current fee and expense request included fees and expenses dating from May 1, 2003, through February 28, 2007.  Because the dates covered in petitioners' current fee and expense request went back to May 1, 2003, it included fees we had disallowed as premature in Young v. Commissioner, supra.  The invoices submitted covering the overlapping periods were identical except for the fees originally submitted on invoice Nos. 4707, 4708, and 4709 in petitioners' appellate fee request, which were submitted on a different invoice, No. 4712, in petitioners' current fee and expense request.  Other than the number of the master invoice in which

the fees are listed, there is no difference in the fees and expenses submitted.

On July 27, 2007, we ordered respondent to submit a response to petitioners' current fee and expense request by August 27, 2007. On August 23, 2007, respondent filed a response to petitioners' current fee and expense request (herein referred to as respondent's current response). In the current response, respondent objected not only to the fees and expenses in petitioners' current request but also to fees and expenses petitioners had requested in their July 15, 2005, appellate fee request. As part of respondent's incorporation of respondent's objections to the appellate fee request respondent attached copies of portions of respondent's response to petitioners' appellate fee and expense request: Pages 13-19 and Exhibit F of respondent's October 28, 2005, response and pages 15-16 and Exhibit E of respondent's March 1, 2006, response.

Respondent spent little effort to clarify exactly which portions of the previous responses--attached or not--were incorporated in respondent's current response. In the current response, respondent restated respondent's objections, from respondent's October 28, 2005, response to petitioners' request for an award of appellate fees, to: $18,627.12 in fees pertaining to closed cases, $8,175.62 in fees pertaining to matters unrelated to the Dixon V remand, $29,389.70 related to

Osborn, $9,536.16 in undocumented expenses, and the reasonableness of Jones's hourly rate of $350.  However, Exhibit F, which respondent attached, described only $3,949.75 in fees and expenses related to the closed cases and $3,470 in fees and expenses unrelated to the proceedings on remand, and $1,946.62 in fees and expenses related to Osborn.  The response included no explanation of which fees petitioners had failed to substantiate.

Even though Exhibit E of respondent's March 1, 2006, response included more than $35,856 in fees, respondent specifically objected only to $3,477.50 of the fees from Exhibit E under the heading "Spreadsheet (First Supplement) Questionable Entries Robert Allen Jones Time and Fees" in respondent's current response.  Respondent did not specify whether respondent was renewing previous objections to the remaining $32,378.50 in fees and expenses included in Exhibit E that were incurred before the remand period.

In the current response respondent also objected for the first time to:  $10,436.07 in duplicate fees, $12,322.38 in appellate fees, $12,349.70 in fees pertaining to the closed cases, $11,497.50 in excess time spent preparing opening brief, $33,946.90 in fees and expenses pertaining to client relations and computations, $10,222.25 in fees and expenses that are objectionable for a variety of reasons, and petitioners' not

having paid or incurred the fees and expenses for which they had applied.

On October 4, 2007, petitioners filed a reply to respondent's current response.  Petitioners stated that the appellate fees respondent objected to were not part of petitioners' current fee request.  Petitioners also pointed out that Exhibit E from respondent's March 1, 2006, response to petitioners' appellate fee request contained numerous entries dated before the remand period and that Jones had not included these entries in petitioners' current fee and expense request.

In their reply to respondent's response, petitioners also conceded that they should not receive an award for entries related to the closed cases that they had included in their current request.  After conceding this point, however, petitioners argued that some of the entries respondent claimed were related to the closed cases were attributable to other matters.  Petitioners provided a list of the entries they contended respondent claimed were related to the closed cases and the amounts of those entries petitioners agreed should be disallowed.  The entries petitioners conceded were related to the closed cases amounted to $17,359 in fees and $17.20 in expenses. However, among the entries petitioners claimed respondent objected to as related to the closed cases, petitioners

erroneously included fees and expenses respondent had objected to on other grounds.[8]

## Discussion

### I. Application of Section 6673(a)(2)(B)

The parties agree that attorney's fees and expenses should be awarded, under section 6673(a)(2)(B), with respect to all petitioners who participated in the Dixon V remand proceedings.[9] Section 6673(a)(2) provides:

> (2) Counsel's liability for excessive costs.-- Whenever it appears to the Tax Court that any attorney or other person admitted to practice before the Tax Court has multiplied the proceedings in any case unreasonably and vexatiously, the Tax Court may require--

>> (A) that such attorney or other person pay personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct, or

>> (B) if such attorney is appearing on behalf of the Commissioner of Internal Revenue, that the United States pay such excess costs, expenses, and attorneys' fees in the same manner as such an award by a district court.

---

[8]The list provided in petitioners' reply to respondent's response also contained numerous computational errors and inconsistencies. To avoid confusion, we have not elaborated on which of respondent's objections correspond to individual entries on petitioners' list. However, we have disallowed, on the pertinent grounds, all those entries petitioners conceded are related to the closed cases.

[9]We would expand the defined population entitled to awards to include Kersting project petitioners whose interests were represented in the Dixon V remand proceedings and who paid or incurred the obligation to pay fees and expenses of attorneys who provided services and have filed motions for awards.

During the Kersting tax shelter litigation this Court awarded attorney's fees and expenses under section 6673(a)(2)(B) incurred in proceedings in this Court--Dixon IV--and under section 7430 for fees and expenses incurred in the Dixon V appellate proceedings--Dixon VII and Young v. Commissioner, T.C. Memo. 2006-189.

In Dixon IV, Dixon VII, and Young, we explained the distinction between fee-shifting prevailing party statutes, such as section 7430, which are based on substantive policy that allows prevailing parties to recover their fees as compensation, and fee sanction statutes, such as section 6673(a)(2), which emphasize punishment and deterrence of party and attorney misconduct. See Chambers v. NASCO, Inc., 501 U.S. 32, 52 (1991); Bus. Guides, Inc. v. Chromatic Commcns. Enters., Inc., 498 U.S. 533 (1991); Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 409 (1990). Both section 6673(a)(2) and section 7430 limit the award of fees to reasonable fees and expenses. However, fee-shifting statutes, such as section 7430, impose additional limitations that do not apply under the sanction statutes, placing an hourly rate cap on fees, imposing a net worth limitation on taxpayers requesting reimbursement, and allowing awards to be made only in favor of prevailing private parties.

In Dixon IV we awarded fees and expenses under 6673(a)(2)(B) because those fees were directly related to the misconduct of

respondent's attorneys leading to our opinion and decisions in Dixon III.  In Young v. Commissioner, supra, and Dixon VII, we denied awards of fees under section 6673(a)(2)(B), following the reasoning in Cooter & Gell v. Hartmarx Corp., supra at 409, that the appeal of a decision to sanction a party's conduct was not directly related to sanctionable conduct.  Instead, we awarded fees and expenses under section 7430 because petitioners substantially prevailed on appeal.

In the Dixon V remand proceedings, we determined the terms and scope of the Thompson settlement, which directly related to the misconduct of Sims and McWade and our failure in Dixon III to "get it right".  We now award fees and expenses under section 6673(a)(2)(B) that are attributable to services Jones performed during the Dixon V remand proceedings.

II.  Adjustments to Requested Fees and Expenses

We now turn to respondent's objections to fees and expenses in petitioners' current fee and expense request, as supplemented. Respondent first objects that the fees and expenses petitioners request were not reasonably incurred because Jones has failed to substantiate that the fees were, in fact, paid or incurred. Respondent also objects to the reasonableness of hourly rates charged by Jones and his staff, fees and expenses petitioners did not submit in their current fee and expense request, fees and expenses we declined to award in Young v. Commissioner, supra,

because they were related to the Dixon V remand proceedings, fees and expenses incurred in preparing the appellate fee request, fees and expenses related to the closed cases, the number of hours Jones's staff spent on the opening brief, fees and expenses attributable to client relations, fees and expenses related to proposed expert witness Osborn, fees and expenses related to Jones's and O'Donnell's motion for summary judgment of a 100-percent discount as sanction, inadequately described fee and expense entries, and miscellaneous other items.

A.   Substantiation of Fees

Respondent also objected, in respondent's response to petitioners' current fee and expense request, that petitioners have not substantiated the amounts they paid between June 1, 2005, and April 30, 2007.  In petitioners' October 4, 2007, reply to respondent's response, Jones attached a list of the amounts his clients had paid.  We therefore conclude that petitioners have substantiated the amounts paid.

B.   Jones's Hourly Rate

Respondent objects that Jones's hourly rate of $350 is unreasonable and urges us to allow Jones the same rate as we did in Young v. Commissioner, supra, in which we awarded fees and expenses under section 7430.  Respondent is arguing in effect that the capped rate under section 7430 applies to section 6673(a)(2).  We disagree.  As a fee-shifting prevailing party

statute, section 7430 places a cap on the hourly rate for an award of attorney's fees.  Section 6673(a)(2), however, is a fee sanctions statute and its provisions require only that the fees awarded be reasonable.  Section 6673 does not impose a cap on hourly rates.  See Harper v. Commissioner, 99 T.C. 533, 552 (1992).

Jones's rate is reasonable.  During the Dixon V remand proceedings, Binder and Irvine billed at rates ranging from $310 to $425 before 2005 and $375 to $475 during and after 2005.  Sticht billed at $350 per hour for his services during the remand period.  Respondent has agreed that Binder's, Irvine's, and Sticht's rates are reasonable.  At $350 per hour, Jones's rate approximates or equals the rates charged by Binder and Sticht.  Jones's rate is also less than the rate charged by Irvine.

C.   Respondent's Objections to Fees and Expenses Not Included in Current Request

We next address respondent's objections to fees and expenses petitioners did not include in their current fee and expense request.  In respondent's response to petitioners' request, respondent renewed the objections from respondent's October 28, 2005, and March 1, 2006, responses to petitioners' July 15, 2005, appellate fee request and its supplements.  These renewed objections date back as far as 1999.  However, petitioners requested fees and expenses incurred only after April 30, 2003, 1 week after our receipt of the Dixon V primary mandate.  In

determining the award to petitioners in this opinion, we have considered only those fees and expenses petitioners included in their current fee and expense request. We therefore deny respondent's objections to fees and expenses not included in petitioners' current request.

D.   Fees and Expenses Included in Petitioners' Dixon III Appellate Fee Request

Petitioners' current fee and expense request includes entries of $9,832.50 in fees and $333.57 in expenses that petitioners also included in their appellate fee request. Respondent argues that we have already addressed these fees and expenses in Young v. Commissioner, T.C. Memo. 2006-189, and that petitioners cannot include them in their current fee request. We disagree; we disallowed these fees and expenses in Young because they were related to the Dixon V remand proceedings, making premature their inclusion in petitioners' appellate fee request. However, petitioners' inclusion of those fees and expenses in their current fee and expense request is timely. We make no downward adjustment to petitioners' award on the basis of respondent's objection that petitioners have included in their current fee and expense request fees and expenses we denied in Young.

E.   Fees Incurred During the Appeal of Dixon III

Respondent also objects that $12,270 of fees and $52.38 of expenses included in petitioners' current fee and expense request are related to the appeal of Dixon III and not related to the Dixon V remand proceedings.  Those fees are as follows:

|  | Hours | Amount |
|---|---|---|
| Jones | 15.70 | $5,495 |
| Law clerk | 67.75 | 6,775 |
| Total | 83.45 | 12,270 |

In their reply to respondent's response, petitioners have stated that none of the entries in their current fee request relate to the Dixon V appellate proceedings.  Despite this claim, however, petitioners included fees and expenses related to the appellate fee request in their current fee and expense request. Petitioners' request for appellate fees was not related to the proceedings on remand.  We awarded fees related to the appeal of Dixon III in Young v. Commissioner, supra.  Petitioners' final opportunity to apply for appeal-related fees has passed. Accordingly, we disallow $12,270 of fees and $52.38 of expenses related to the appeal of Dixon III.

F.   Fees Related to Closed Cases

Respondent objects to $16,557.50 of fees and $91.20 of expenses related to the closed cases.  The hours and fees respondent claims are attributable to work on the closed cases are as follows:

|            | Hours | Amount      |
|------------|-------|-------------|
| Jones      | 39.80 | $13,930.00  |
| Paralegal  | 7.29  | 890.00      |
| Law clerk  | 4.50  | 537.50      |
| Accountant | 6.55  | 1,200.00    |
| Total      | 58.14 | 16,557.50   |

In their October 4, 2007, reply to respondent's response, petitioners conceded that efforts to vacate stipulated decisions in closed cases are separate matters, unrelated to the terms of the Thompson settlement. However, petitioners argue that some of the entries respondent claims are related to the closed cases are not so related. They have provided a list, identifying 12.7 hours, amounting to $1,720 in fees, and $120.62 in expenses they claim respondent incorrectly attributed to work related to the closed cases.

After reviewing the relevant entries, we agree that respondent incorrectly attributed .5 hours of attorney time to work related to the closed cases. The entry dated June 6, 2006, claims 1 hour of attorney time for "Conference call with O'Donnell, Henry O Neill, IRS re: settlement stipulations, attorney's fees remand; Reopening partially settled cases," and cannot be completely attributable to work related to the closed cases. We therefore allow 50 percent of that entry; .5 hours of Jones's services, amounting to $175 in fees.

We disallow the remaining 57.64 hours of fee entries respondent objects to as related to the closed cases.[10]  This results in reductions of petitioners' fee and expense awards by $16,382.50 and $91.20, respectively.

G.    Excessive Time on Opening Brief

Respondent argues that the time Jones's staff spent on the joint opening brief is excessive and urges us to disallow a portion of the related fees.  Respondent claims the number of hours Jones's paralegal and law clerk spent on the opening brief is not "reasonable" within the scope of section 6673(a)(2).  Respondent objects to a total of $11,497.50[11] in fees related to

---

[10]In the list of entries petitioners claim respondent attributed to closed cases, petitioners mistakenly included several entries to which respondent had objected for other reasons, such as work related to Osborn, to the summary judgment of a 100-percent discount as sanction, inadequately described entries, and entries otherwise unrelated to the Dixon V remand proceedings.  We did not include these entries in our computation of entries related to the closed cases, but in our computations of entries related to the appropriate corresponding objections.  However, we have not allowed any of the entries petitioners have conceded are noncompensable.

[11]Respondent included $5,150 of fee entries in both respondent's objections to "duplicate" fees and respondent's objections to excessive hours spent working on the opening brief.  We counted the $5,150 only once in calculating the $116,873.75 of "Fees respondent objects to" in our fee award table, see supra p. 7, because both sets of objections were to the same fees.

the opening brief.  The fees corresponding to this objection are as follows:[12]

|  | Hours | Amount |
|---|---|---|
| Paralegal | 71.75 | $9,327.50 |
| Law clerk | 21.70 | 2,170.00 |
| Total | 93.45 | 11,497.50 |

Respondent does not object to an award for any of the 26.3 hours Jones spent on the brief.

We disagree with respondent.  Jones's staff did not expend an excessive number of hours on the opening brief.  The entries in Jones's invoices make clear that Jones and his staff were not only writing the supplement to the opening brief Jones filed separately with Izen and O'Donnell but also helping Binder with the joint opening brief.  In fact the billing statements Porter & Hedges submitted specifically refer to a "portion" of the opening brief on which Jones was working.  Accordingly, we make no deductions for time Jones's staff spent on the opening brief.

H.  Client Relations

Respondent objects to time respondent refers to as "client relations".  Respondent asserts that $33,932.50 in fees and $2,903.15 in expenses in petitioners' current fee request are

---

[12]Twenty-five law clerk hours and 21.5 paralegal hours dedicated to the opening brief were included in respondent's objections to entries submitted in both petitioners' appellate and current fee requests.  There is no indication that petitioners have previously received any award for these hours.

attributable to client relations and should be disallowed.  Those
fees are as follows:

|           | Hours  | Amount      |
|-----------|--------|-------------|
| Jones     | 6.20   | $2,170.00   |
| Accountant| 158.81 | 31,762.50   |
| Total     | 165.01 | 33,932.50   |

We disagree with respondent.  We may award fees for time
spent on client relations if that time is sufficiently related to
the matter for which petitioners are entitled to a fee and
expense award.  See Dixon VII.  Moreover, where petitioners do
not provide the subject matter for client communications, we may
determine the amount of those communications that is compensable.
In this case, if the subject matter of client communications is
unclear, we will allow petitioners an award of 50 percent of the
requested fee or expense.

In Dixon VII we addressed the issue of client relations when
we evaluated whether to award fees related to Binder's and
Irvine's client conferences.  Because we did not know the subject
matter of these conferences, we assumed that 50 percent of the
time spent in the conferences related to the appeal (the matter
for which we were awarding fees) and the remaining 50 percent
related to noncompensable unrelated matters (client relations and
"hand holding").  We then awarded fees for the portion of the
time we allocated to appeal-related matters.

In Young v. Commissioner, T.C. Memo. 2006-189, we applied the same approach in evaluating fee and expense entries that did not specify the subject matter of client communications. We allocated 50 percent of those communications to the appeals, granting an award for that portion of the time, and 50 percent to unrelated, noncompensable matters.

In the case at hand, the majority of the fee entries respondent objects to as related to client relations are for the calculation of petitioners' deficiencies and overpayments according to our decisions following Dixon VI and VIII.

These calculations were necessary to prepare the decision documents to be submitted to the Court for entry of decision. Because petitioners have appropriately documented the compensable subject matter of these client-related matters, we allow these entries in their entirety.

Most expenses that respondent objects to as client relations are expenses for mailing copies of court filings to clients. We disagree with respondent, finding that these expenses are attributable to compensable aspects of client relations.

Among respondent's objections, however, are three client relations entries not attributable to the computation of client deficiencies and overpayments or mailing copies of court filings to clients. We apply the same reasoning we applied in Young v.

<u>Commissioner</u>, <u>supra</u>, and Dixon VII in determining the compensability of these three entries.

The first entry, dated August 9, 2006, is a "Letter to clients re: status; description of appeal possibilities." This entry consists of 1.25 hours of Jones's services, amounting to $437.50 in fees. It is clear that these communications were not related to the matter on remand. We disallow the fees pertaining to this entry.

The second entry is an expense labeled "Express to L. Wade." Because the subject matter of the letter is unclear, we apply the approach of <u>Young v. Commissioner</u>, <u>supra</u>, and Dixon VII, and disallow one-half of the fees pertaining to this entry, $7.20.

The third entry, "Review and execute joint letter to clients with Declan", comprises .25 hours of Jones's services, amounting to $87.50 in fees. In this case the contents of the communication are not clear, so we disallow 50 percent of the award requested, reducing petitioners' award by $43.75. Therefore, we will deduct a total of $481.25 in fees and $7.20 in expenses from petitioners' requested award because those sums are related to noncompensable client relations. The fees and expenses we have disallowed under this heading are as follows:

|  | Hours | Amount |
|---|---|---|
| Fees | | |
| Jones | 1.38 | $481.25 |
| Accountant | -0- | -0- |
| Total | 1.38 | 481.25 |
| | | |
| Expenses | | $7.20 |

I.   Osborn Proposed Expert Witness Report

Respondent objects to $25,921.25 in fees and $9,783.52 in expenses related to the services of proposed expert witness Osborn.   The fees corresponding to this objection are as follows:

|  | Hours | Amount |
|---|---|---|
| Jones | 49.55 | $17,342.50 |
| Paralegal | 36.24 | 4,378.75 |
| Account manager | 21.00 | 4,200.00 |
| Total | 106.79 | 25,921.25 |

We deny any award of attorney's fees or expenses related to Osborn and her proposed expert witness report that were incurred after the filing of Smart's declaration on November 24, 2003.  In our order of December 10, 2004, we stated that, after receiving Smart's declaration, Jones should have known that Osborn's testimony would not be useful to the Court and thus that fees and expenses related to Osborn's services that were incurred after that date were not reasonably incurred.  All fees and expenses that respondent objects to as related to Osborn were incurred after November 24, 2003.

This is not the first time that a court has questioned the relevance and usefulness of Osborn's expert testimony.  In Jones

v. United States, 81 Fed. Appx. 209 (9th Cir. 2003), the Court of Appeals affirmed the District Court's unpublished ruling in Jones v. United States, 89 AFTR 2d 2002-1816, 2002-1 USTC par. 50, 380 (D. Nev. 2002), that an affidavit Osborn provided did not constitute newly discovered evidence that would have likely changed the outcome of the case. The Court of Appeals similarly discounted Osborn's testimony in Parenti v. I.R.S., 70 Fed. Appx. 470 (9th Cir. 2003), affg. Parenti v. I.R.S., 91 AFTR 2d 2003-1136, 2003-1 USTC par. 50,282 (W.D. Wash. 2003), holding that arguments based on Osborn's testimony claiming the assessment against Parenti was time barred and that the District Court had erred in excluding materials provided by Osborn lacked merit. See Appellant's or Petitioner's Informal Brief at 5-6, 19-20. In MacElvain v. Commissioner, T.C. Memo. 2000-320, the Tax Court rejected Osborn's testimony after determining Osborn had no firsthand knowledge of the taxpayer's cases docketed in the Tax Court.

The Tax Court recently sanctioned Jones for attempting to use Osborn's testimony in Gillespie v. Commissioner, T.C. Memo. 2007-202, affd. on other issues 292 Fed. Appx. 517 (7th Cir. 2008), and Davis v. Commissioner, T.C. Memo. 2007-201, affd. 301 Fed. Appx. 398 (6th Cir. 2008), because her testimony addressed the "post-cycle date" theory previously rejected in Dahmer v. United States, 90 AFTR 2d 2002-6804, 2002-6809, 2002-2 USTC par.

50,806, at 86,219 (W.D. Mo. 2002).  We also sanctioned Jones in these cases for making frivolous arguments related to Osborn's proposed testimony.  We sustain in their entirety respondent's objections to fees and expenses attributable to Jones's efforts to include the proposed expert witness report of Osborn.

J.    Motion for Summary Judgment of 100-percent Discount as Sanction

Respondent objects to including in the award fees incurred in preparing and filing the motion for summary judgment of a 100-percent discount as a sanction and the motion to reconsider that motion, claiming that motion was "borderline frivolous".  Respondent objects to $2,600 in fees on these grounds, as follows:

|  | Hours | Amount |
|---|---|---|
| Jones | 7.00 | $2,450 |
| Paralegal | 1.50 | 150 |
| Total | 8.50 | 2,600 |

We agree with respondent and disallow fees incurred in the preparation and filing of the "Motion for Summary Judgment of 100-percent Discount as Sanction" in their entirety.  Rule 121(b) governs the disposition of motions for summary judgment filed in this Court.  For the Court to grant a motion for summary judgment, (a) the moving party must show the absence of dispute as to any material fact and that a decision may be rendered as a matter of law; (b) the factual materials and the inferences to be

drawn from them must be viewed in the light most favorable to the party opposing the motion; (c) the party opposing the motion cannot rest on the mere allegations or denials, but must set forth specific facts showing there is a genuine issue for trial. Brotman v. Commissioner, 105 T.C. 141, 142 (1995) (citing O'Neal v. Commissioner, 102 T.C. 666, 674 (1994)).

In our order of March 2, 2005, we denied the motion for summary judgment of a 100-percent discount as a sanction, stating:  "The motion for summary judgment does not appear to be a genuine attempt to resolve, even in part, the issues before the Court."  It should have been obvious to Jones and O'Donnell that there were numerous outstanding issues of fact.  Moreover, on March 29, 2005, even after we denied their first motion, Jones and O'Donnell filed a second motion in which they asked the Court to reconsider their motion for summary judgment.  We summarily denied their March 29, 2005, motion the day they filed it.  The primary mandate of the Court of Appeals in Dixon V required us to determine the terms of the Thompson settlement.  In Dixon V at 1047 the Court of Appeals stated:

> we will not enter judgment eradicating all tax
> liability of these taxpayers. Such an extreme sanction,
> while within the court's power, is not warranted under
> these facts.  Instead, we remand to the trial court
> with directions to enter judgment in favor of
> Appellants and all other taxpayers properly before this
> Court on terms equivalent to those provided in the
> settlement agreement with Thompson and the IRS.
> [Citation and fn. ref. omitted.]

If we had awarded summary judgment of a 100-percent discount as a sanction, we would have completely disregarded the mandate of the Court of Appeals.  We deny in its entirety petitioners' request for fees related to the motion for summary judgment of a 100-percent discount as a sanction.

K.    Inadequately Described Entries

Respondent also claims that $4,895 in fee entries in petitioners' current request are not detailed enough to determine whether those entries are related to the proceedings on remand and, thus, compensable.  The hours and amounts attributable to those entries are as follows:

|  | Hours | Amount |
|---|---|---|
| Jones | 9.75 | $3,412.50 |
| Law Clerk | 10.50 | 1,482.50 |
| Total | 20.25 | 4,895.00 |

The following amount to 9.75 hours and $3,412.50 in attorney's fees:  "Brief with ML for Dixon", "Discussion re: draft from Binder on sanctions with ML", "Call to O'Donnell", "Work on brief with ML; conversation with Joe Izen," "Work with ML on sentencing," "Beghe order of 7/29 re: remittance to ML," and "Soliation".

In their reply petitioners did not explain who "ML" is and why communications with "ML" would be necessary or the meaning of "Soliation".  As a result, we cannot determine whether these entries are related to the Dixon V remand proceedings.  We

therefore disallow the corresponding $3,412.50 of attorney's fees.

Respondent also identifies 10.5 hours of law clerk services amounting to $1,482.50 in fees that petitioners have not adequately described:  "Reviewed recent pleadings", "Read recent pleadings", "Calls to Garrett, Gruen and Hinrich", and "Call from Attorney Binder".  Petitioners have not explained the subject or purpose of any of the above entries, any of which could pertain to something other than determining the terms of the Thompson settlement.  We disallow $1,482.50 of inadequately described law clerk fees.  Petitioners' fee request is reduced by a total of $4,895 for inadequately described work.

L.    Miscellaneous Objections and Adjustments

Respondent also objects, on various grounds, to including in the award $4,517.50 in fees and $14.20 in expenses as follows:

|  | Hours | Amount |
|---|---|---|
| Jones | 7.25 | $2,537.50 |
| Paralegal | 17.70 | 1,980.00 |
| Total | 24.95 | 4,517.50 |

The entries that respondent objects to under this heading include work related to a potential appeal, a motion to recuse the judge, and routine file maintenance.  The first of these objections concerns work related to a potential appeal, to which a total of $2,137.50 in fees is attributed:  4.25 hours of

Jones's time, amounting to $1,487.50 in fees, and 6.5 hours of the paralegal's time, amounting to $650 in fees.

We agree with respondent. Work related to a potential appeal is not related to the Dixon V remand proceedings. Therefore, we disallow $2,137.50 in fees for services related to a potential appeal.

Respondent also objects to an entry related to a motion to recuse the judge, amounting to 5.2 hours of paralegal time and $520 in fees. We agree with respondent. Petitioners never filed a motion to recuse. We will disallow an award of fees amounting to $520 related to this subject.

Respondent objects to fee requests for routine file maintenance; 6 hours and $810 in fees are attributable to paralegal time and 1 hour amounting to $350 in fees is attributable to attorney time. We agree with respondent. Routine office tasks are not sufficiently related to the proceedings on remand. Therefore, we disallow fees for these entries and deduct an additional $1,160 in fees.

Two other entries are not sufficiently related to proceedings on remand: One for "Refund Claims" for 1 hour of work at Jones's rate of $350 per hour and another for "Powers of Attorney" for 1 hour of attorney time, amounting to $350. We will not award fees for either of these entries and disallow an additional $700 from petitioners' requested amount.

Respondent objects to $28.80 in miscellaneous expenses;
"EXPRESS TO DECLAN O'DONNELL" and "Express to L. Wade".  We
deducted $14.40 for the entry "Express to L. Wade" earlier in our
"closed cases" section.  Accordingly, we will not deduct that
amount here again.  However, we agree with respondent that the
entry "EXPRESS TO DECLAN O'DONNELL" is an inadequate description.
After considering respondent's miscellaneous objections, we
reduce the requested award by a total of $4,517.50 in fees and
$14.40 in expenses.

## Conclusion

We disallow a total of $67,067.50 in fees and $9,948.70 in
expenses from petitioners' requested award.  Our downward
adjustments are tabulated below:

### Summary of Disallowances

| Objection | Fees | Expenses |
| --- | --- | --- |
| Duplicative fees | -0- | -0- |
| Dixon III appeal | $12,270.00 | $52.38 |
| Closed cases | 16,382.50 | 91.20 |
| Opening brief | -0- | -0- |
| Client relations | 481.25 | 7.20 |
| Osborn | 25,921.25 | 9,783.52 |
| Summary judgment of a 100-percent discount | 2,600.00 | -0- |
| Inadequately described entries | 4,895.00 | -0- |
| Miscellaneous | 4,517.50 | 14.40 |
| Total | 67,067.50 | 9,948.70 |

After these amounts are deducted from the petitioners' fee and expense request, petitioners are entitled to an award of $198,649.95 in fees and $6,017.27 in expenses.

Giving effect to our concluding determination in Dixon IX, we shall invoke our inherent power to require respondent to pay to petitioners additional amounts equal to interest at the applicable rates for underpayments under sections 6601(a) and 6621(a)(2) on $198,649.95 and $6,017.27 from July 10, 2007, the date Jones filed petitioners' motion for attorney's fees and expenses. We shall address the manner in which the award is to be paid and its allocation among Jones's clients in the order implementing the determinations in this opinion.

To give effect to the foregoing,

<u>An appropriate order will be entered</u>.